IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| WESLEY COOK, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 3:18-CV-382-TWP |
| ) | 3:17-CR-015-TWP-DCP-1 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

Before the Court is Wesley Cook's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 34].[1] The United States has responded in opposition [doc. 6]; and Petitioner has replied [doc. 7]. For the reasons below, Petitioner's § 2255 motion [doc. 1; crim. doc. 34] will be **DENIED**.

**I.    BACKGROUND**

In 2016, Petitioner was indicted on one charge of failure to register as a sex offender pursuant to the Sex Offender Registration and Notification Act ("SORNA"), the Ohio Sex Offender Registry Law, and the Tennessee Sex Offender Registry Law, in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. §§ 16911 and 16913. [Crim. Doc. 1].

---

[1] Document numbers not otherwise specified refer to the civil docket.

A factual basis submitted by the government indicated that on or about June 30, 2014, Petitioner was released from prison following a felony sex offense conviction. [Crim. Doc. 14 at 1]. His parole was to be supervised in Tennessee and he was transferred accordingly. In August 2016, the Ohio Parole Board ordered Petitioner to return to Ohio on various parole violations, including a positive drug test, pornography violations, and failure to attend sex offender programs. As a result, Petitioner was ordered to remain in Ohio for the duration of his parole, until 2019. However, Petitioner left Ohio, a warrant was issued for him on this parole violation, and he was arrested in Powell, Tennessee. [*Id*.]. After his arrest, Petitioner admitted that he was ordered to stay in Ohio until 2019, but immediately returned to Tennessee and remained there until his arrest. [*Id*. at 2]. The government stated that Petitioner had previously been convicted of rape. [*Id*.]. The government alleged that Petitioner traveled in interstate commerce and knowingly failed to register or update his sex offender registration from August 2016 until his arrest in October 2016. [*Id*. at 3]. Petitioner pleaded guilty to the sole count of the indictment without the benefit of a plea agreement. [Crim. Doc. 15].

The presentence investigation report ("PSR") calculated a total offense level of 13 and criminal history category of V, resulting in a guideline range of 30 to 37 months. [PSR ¶¶ 24, 49, 76]. Of relevance, the PSR noted that, on September 14, 2011, Petitioner pled guilty to one count of rape, and was sentenced to three years' imprisonment, and found to be a Tier III sexual offender. [*Id*. ¶ 45]. Petitioner had been charged with four other counts of rape, as well as several counts of gross sexual imposition, kidnapping, disseminating matter harmful to juveniles, and endangering children. These charges stemmed from

allegations that Petitioner engaged in sexual conduct and physical abuse with the three children of his ex-girlfriend, who were ages 5, 5, and 8 at the time. The PSR stated that "[t]he sexual contact included touching the victim's genitalia and oral sex. He committed the offenses by holding the victims down and locking doors. Mr. Cook also disseminated matter harmful to juveniles, adult pornography." The PSR noted that Petitioner was released under post-release control ("PRC") on June 30, 2014. On August 23, 2016, Petitioner was found to have violated his PRC and was returned to custody. He was again released under PRC on March 29, 2017, and PRC was terminated on June 13, 2017. [*Id*.].

The PSR also noted that "[a]ccording to Tennessee Department of Correction records, the defendant was identified as a suspected member of the Aryan Nation, however, Mr. Cook denies membership." [*Id*. ¶ 46]. In discussing the recommended terms of supervised release, the PSR contained special conditions for sex offenders, which it recommended be applied in this case. [*Id*. ¶ 85]. The PSR was later revised to add two prior convictions, which did not alter the guideline calculation. [*See* PSR Addendum; Revised PSR].

The government filed a notice of no objections to the PSR. [Crim. Doc. 18]. The government filed a sentencing memorandum requesting a sentence of 30 months' imprisonment, at the low-end of the guideline range. [Crim. Doc. 19 at 1]. Petitioner, through his counsel, Benjamin Sharp, objected to the PSR's recommended terms of supervised release in paragraph 85,[2] specifically asserting that his SORNA violation was

---

[2] After the PSR was revised, the applicable paragraph became paragraph 88.

not a sex offense, and therefore, he objected to any conditions that would require treatment or evaluation as a sex offender. [Crim. Doc. 20 at 1]. The Court ordered Petitioner to clarify which portions of the proposed sex offender conditions he was objecting to. [Crim. Doc. 23].

Petitioner, through counsel, then filed amended objections, specifically as to Paragraphs 88(a), 88(h), 88(i), and 88(l) of the revised PSR. [Crim. Doc. 24]. As to paragraph 88(a), which ordered Petitioner to participate in sex offender mental health treatment, Petitioner argued that there was no indication that he had committed any other conduct related to a sex offense, and the failure to register as a sex offender was not a "sex offense" under the Guidelines. [*Id*. at 2]. As to paragraph 88(h), which required Petitioner to participate in a psychosexual assessment, Petitioner objected to the use of a plethysmograph test as part of any psychosexual assessment, asserting that such was highly invasive. [*Id*. at 3-5]. As to paragraph 88(i), which required Petitioner to submit to polygraph testing, Petitioner objected for the same reason as he objected to the plethysmograph test, and also noted that the admission of polygraph evidence is not favored in this Circuit. [*Id*. at 6]. Finally, as to paragraph 88(l), which prohibited Petitioner from using a computer or electronic device with access to the internet without prior approval from the probation officer, Petitioner asserted that there was not sufficient evidence to support the need for this condition, since he did not use a computer during his prior sex offense. [*Id*. at 6-7].

The government responded, opposing Petitioner's objections to the PSR. [Crim. Doc. 26]. The government emphasized Petitioner's prior sex offense and the short time

period between his release from prison and his committing the instant offense. [*Id*. at 2-4]. The government argued that the sex offender special conditions were reasonably related to Petitioner's history and characteristics, as well as the nature and circumstances of the instant offense. [*Id*. at 7-8].

In a second addendum to the PSR, the probation officer responded to Petitioner's objections, noting that Petitioner had never had a psychosexual evaluation and had not completed his previously-ordered sex offender treatment. [Crim. Doc. 27]. Thus, the probation officer stated that a psychosexual evaluation, sex offender treatment, and polygraph testing conditions were vital for the probation office to perform its duty of protecting the public. The probation officer also stated that the computer restriction was necessary for the rehabilitation of the defendant and the protection of the community. [*Id*.].

This Court issued a written opinion overruling Petitioner's objections to specific sex offender special conditions. [Crim. Doc. 29]. The Court repeatedly noted that, as Petitioner's counsel had pointed out, a SORNA violation is not a "sex offense" under the Guidelines. [*Id*. at 5, 9, 12]. Nonetheless, the Court concluded that the contested conditions of supervised release were reasonably related to the factors set forth in 18 U.S.C. § 3553(a). [*Id*. at 4-13]. The Court did however amend the condition relating to a psychosexual evaluation to specifically exclude the possibility of plethysmograph testing. [*Id*. at 9].

Petitioner, through counsel, also filed a sentencing memorandum, requesting a 30-month sentence at the low end of the guideline range. [Crim. Doc. 28 at 4]. Petitioner also requested that his sentence run concurrent with his Ohio convictions for violating his

5

probation and escape, both of which related to him leaving the state of Ohio without permission, which was related to the instant offense. [*Id*. at 3]. Petitioner also noted that, despite the PSR's statement, he denied any affiliation with the Aryan Nation, and had always been a model inmate. [*Id*. at 4].

On March 5, 2018, the Court sentenced Petitioner to 30 months' imprisonment, with such term of imprisonment to run concurrently to the sentences for his Ohio charges for violation of probation and escape. [Crim. Doc. 31 at 2]. Petitioner did not file a direct appeal, but on September 11, 2018, he filed this timely § 2255 motion.

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his

6

ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d

7

at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

As an initial matter, Petitioner raises three claims in this § 2255 motion: Claim 1 involves the terms of his supervised release; Claim 2 involves the calculation of his time served; and Count 3 involves ineffective assistance of counsel relating to both of the above issues and the filing of an appeal. [Doc. 1]. Petitioner cites counsel's ineffectiveness regarding any appeal as cause for his failure to raise Claims 1 and 2 on direct appeal. [*Id.* at 4-5]. Accordingly, this Court will first address Claim 3, to determine whether counsel was ineffective, and if such excuses the procedural default of Claims 1 and 2.

**Claim 3:**

In Claim 3, Petitioner asserts that his counsel was ineffective in: (a) failing to inform him that the sex offender special conditions of his sentence did not apply to a SORNA violation; (b) informing him that he would receive "concurrent time" for all time served; and (c) advising against filing a direct appeal. [Doc. 1 at 5]. The government responds that the special conditions were well-justified by the 18 U.S.C. § 3553(a) factors, and the determination of whether to grant credit for prior time in custody rests with the Bureau of Prisons ("BOP"), and thus, counsel had no legitimate basis to make the arguments that Petitioner claims should have been raised. [Doc. 6 at 3]. As to the special conditions of supervised release, the government notes that counsel did object to the conditions, but the court denied the objections, and thus, "[g]iven the Court's clear explanation of its rationale for imposing such conditions, counsel had no legitimate basis to object further." [*Id.* at

8

4-5]. Petitioner replies, reasserting his prior allegations, and raising new complaints about his counsel, including: (1) counsel did not object to the factual basis of Petitioner's prior sex offense, even though he informed counsel that the allegations were not true; and (2) counsel did not object to the PSR labelling Petitioner a member of the Aryan Nation. [Doc. 7 at 1-2].

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*,

477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

As to Claim 3(a), alleging that counsel was ineffective in failing to inform Petitioner that the sex offender special conditions did not apply to a SORNA violation, Petitioner cannot show that his counsel's performance was deficient, as the statement that the sex offender special conditions do not apply to SORNA violations is inaccurate. As this Court noted in rejecting Petitioner's objections to the PSR on this basis, special conditions of supervised release must be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D). 18 U.S.C. § 3583(d)(1). The Sixth Circuit has set forth requirements to imposing special conditions of supervised release, including: (1) the condition must be reasonably related to several sentencing factors; (2) the condition must involve no greater deprivation of liberty than is reasonably necessary for sentencing purposes; and (3) the condition must be consistent with any pertinent policy statements issued by the Sentencing Commission. *United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006). Thus, while the sex offender special conditions are not mandatory for a

SORNA violation, such special conditions may still be applied when the defendant has a recent sex offense in his criminal history.

Counsel could not have performed deficiently in failing to inform Petitioner that the sex offender special conditions were not applicable, as such would have been a misstatement of the law. Moreover, counsel apparently discussed with Petitioner the potential to challenge the imposition of the sex offender special conditions, as counsel ultimately objected to the portion of the PSR recommending these special conditions. At the court's request, counsel then filed a detailed brief objecting to certain special conditions, but ultimately, this Court overruled the objections. Thus, counsel simply did not perform deficiently in failing to inform Petitioner about this issue or raise it before the sentencing court.

To the extent that Petitioner is asserting that his counsel was ineffective in failing to raise this issue again at sentencing, Petitioner has not shown that he was prejudiced by this failure. This Court issued a 14-page memorandum discussing Petitioner's objections to the PSR, and why the Court found each of the sex offender special conditions appropriate. For the reasons stated therein, the Court likewise would have overruled any renewed objection to the sex offender special conditions that counsel could have raised at the sentencing hearing.[3] Furthermore, as discussed below, Petitioner has not shown that his counsel was ineffective in failing to file an appeal raising this issue, as Petitioner has

---

[3] Petitioner has not requested a transcript of the sentencing hearing be prepared, and the Court has not ordered one be prepared, as it is not necessary to the disposition of this motion. For purposes of this argument, the Court will assume that counsel raised no renewed objection to the sex offender special conditions at sentencing.

11

not alleged that he asked counsel to file an appeal or would have filed an appeal absent counsel's mis-advice. Accordingly, Petitioner has not shown that counsel was ineffective as to Claim 3(a).

As to Claim 3(b), alleging that counsel was ineffective by informing Petitioner that he would receive concurrent sentences and credit for time served, Petitioner has not shown that his counsel performed deficiently. As the judgment reflects, this Court did order that Petitioner's federal sentence run concurrently with any state sentences for violation of probation and escape. Furthermore, even if counsel had misinformed Petitioner about whether his sentences would run concurrently, and how much credit he would receive for his time served, Petitioner has not shown any prejudice. Petitioner does not allege that the outcome of the case would have been any different if his counsel had not provided this information, and he does not allege that he would not have pleaded guilty had counsel not so advised him regarding his sentence. Because Plaintiff has not even alleged any prejudice, he has not shown that his counsel was ineffective as to Claim 3(b).

As to Claim 3(c), relating to the filing of an appeal, Petitioner has not shown that his counsel performed deficiently. The Supreme Court has held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). However, a defendant's actual request is a critical element of the Sixth Amendment Analysis. *Regalado v. United States*, 334 F.3d 520, 524-26 (6th Cir. 2003) (failure to file an appeal is not ineffective assistance where the attorney was not specifically instructed to do so). Here, the Court finds that Petitioner has failed to meet his burden to

not alleged that he asked counsel to file an appeal or would have filed an appeal absent counsel's mis-advice. Accordingly, Petitioner has not shown that counsel was ineffective as to Claim 3(a).

As to Claim 3(b), alleging that counsel was ineffective by informing Petitioner that he would receive concurrent sentences and credit for time served, Petitioner has not shown that his counsel performed deficiently. As the judgment reflects, this Court did order that Petitioner's federal sentence run concurrently with any state sentences for violation of probation and escape. Furthermore, even if counsel had misinformed Petitioner about whether his sentences would run concurrently, and how much credit he would receive for his time served, Petitioner has not shown any prejudice. Petitioner does not allege that the outcome of the case would have been any different if his counsel had not provided this information, and he does not allege that he would not have pleaded guilty had counsel not so advised him regarding his sentence. Because Plaintiff has not even alleged any prejudice, he has not shown that his counsel was ineffective as to Claim 3(b).

As to Claim 3(c), relating to the filing of an appeal, Petitioner has not shown that his counsel performed deficiently. The Supreme Court has held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). However, a defendant's actual request is a critical element of the Sixth Amendment Analysis. *Regalado v. United States*, 334 F.3d 520, 524-26 (6th Cir. 2003) (failure to file an appeal is not ineffective assistance where the attorney was not specifically instructed to do so). Here, the Court finds that Petitioner has failed to meet his burden to

provide evidence that he specifically requested counsel to file an appeal on his behalf. Not only does Petitioner provide no evidence of such, he does not even allege that he requested counsel file an appeal on his behalf. Thus, Petitioner has not shown that his counsel was ineffective as to Claim 3(c).

Finally, Petitioner asserts, for the first time in his reply brief, that his counsel was ineffective in (a) failing to object to the factual background of his prior sex offense contained in the PSR, and (b) failing to object to the PSR labeling him a member of the Aryan Nation. Such claims are not properly before the Court. "Raising [an] issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (internal quotation marks omitted). Accordingly, each of Petitioner's claims of ineffective assistance is meritless.

**<u>Claims 1 and 2:</u>**

In Claim 1, Petitioner asserts that the district court erroneously imposed sex offender related special conditions of supervised release, however, the clarifying amendment to U.S.S.G. § 5D1.2 states that a SORNA violation is not a sex offense. [Doc. 1 at 3]. Petitioner asserts that this argument should have been addressed at sentencing and on appeal. [*Id.*]. Petitioner states that he did not raise this issue on appeal because his counsel was ineffective in advising him not to appeal. [*Id.* at 4]. The government responds that, although a SORNA violation is not a "sex offense," the Court reasonably imposed sex-offender conditions based on Petitioner's history and characteristics. [Doc. 6 at 4].

In Claim 2, Petitioner asserts that, although the Court sentenced him to 30 months' imprisonment, to run concurrent with his Ohio sentences for violation of probation and escape, he did not actually receive concurrent sentences when his jail time was calculated by the BOP. [Doc. 1 at 4]. Specifically, Petitioner asserts that he did not receive credit for time served from November 30, 2016 to June 14, 2018. [*Id.*]. Petitioner states that he did not raise this issue on appeal because his counsel advised him not to appeal, informing him that he had no appealable issues. [*Id.* at 5]. The government responds that the power to grant credit for time served lies solely with the Attorney General and the BOP. [Doc. 6 at 5]. The government also notes that, to the extent Petitioner is attacking the manner in which his sentence was calculated and is being executed, such claim must be brought under 28 U.S.C. § 2241, after his administrative remedies are exhausted. [*Id.* at 6]. Petitioner replies, reiterating his prior arguments. [Doc. 7].

Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). For a federal prisoner to obtain review of a defaulted claim in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700. If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced by the alleged violation. *Bousley*, 523 U.S. at 623. If a petitioner cannot show cause and prejudice, he may be able to obtain review, if his case falls within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, such

as when new evidence shows that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23, citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Petitioner has not asserted that his is actually innocent. However, he does assert, as cause for his procedural default, that his attorney mis-advised him about filing an appeal. While it is true that ineffective assistance of counsel during the appeal process can serve as a basis for excusing procedural default, *Sullivan v. United States*, 587 F. App'x 935, 942, 948 (6th Cir. 2014), a petitioner attempting to rely on ineffective assistance to establish good cause bears the burden of demonstrating constitutionally deficient performance. *Higgins v. United States*, No. 3:12-cv-636, 2016 WL 526246, at *5 (E.D. Tenn. Feb. 9, 2016). For the reasons discussed in Claim 3, the Court finds that Petitioner had not established that his counsel was ineffective in failing to file an appeal, and as a result, he has failed to establish good cause for his default of Claims 1 and 2. *See Acevedo v. United States*, No. 1:10-cv-46, 2012 WL 256193 (E.D. Tenn. Jan. 27, 2012) (finding Petitioner failed to establish cause for procedural default where he was unable to establish constitutionally deficient assistance on appeal). Accordingly, Claims 1 and 2 are procedurally defaulted, because Petitioner failed to raise them on appeal, and has not shown cause to overcome the procedural default.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [doc. 1; crim. doc. 34] will be **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. A petitioner may appeal a final order denying a § 2255 motion only if he is issued a COA, and a COA should issue only where the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(a), (c)(1)(B), (c)(2). When a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims. Because Petitioner has failed to make such a showing, a COA **SHALL NOT ISSUE**.

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24(a)(3)(A). An order consistent with this opinion will be entered.

       s/ Thomas W. Phillips
       SENIOR UNITED STATES DISTRICT JUDGE